**ORAL ARGUMENT REQUESTED**

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

RAYMOND CLOUTIER,

Plaintiff,

v.

WESTERN UNION EMPLOYEE BENEFIT FUND COMMITTEE, and WESTERN UNION FINANCIAL SERVICES, INC., PENSION PLAN,

Defendant.

Civil Action No. 05-182T

**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS**

Defendants Western Union Employee Benefit Fund Committee (the "Committee") and Western Union Financial Services, Inc. Pension Plan (the "Plan") move pursuant to Fed. R. Civ. P. 12(b)(6) , to dismiss all claims asserted against them by plaintiff Raymond Cloutier ("Cloutier") for failure to state any claim upon which relief may be granted. In the alternative, the Defendants move pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings dismissing all claims.

Cloutier alleges that the Defendants violated "the terms of the Plan" and the fiduciary duty and notice provisions of the Employee Retirement and Income Security Act ("ERISA"), which are codified at 29 U.S.C. §§ 1021 and 1109. Specifically, Cloutier claims that the Defendants violated ERISA when they exercised their discretion to interpret the Plan and concluded that: (i) by the Plan's plain language, Cloutier's entitlement to certain pension benefits could commence only upon the "termination" of his employment; and (ii) therefore, his pension benefits could not be retroactively granted for a period after July 24, 2001, when

Cloutier repeatedly emphasized that his employment had not been terminated. Cloutier further alleges that Defendants failed to satisfy their ERISA obligation to provide him with a summary of his accrued pension benefits by inadequately responding to a July 24, 2001 letter in which he asserted an entitlement "for recall to his former position" after an absence occasioned by a 1990 work-related injury.

The Complaint fails to state a viable claim. First, the interpretation of the Plan challenged by Cloutier was entirely within the Committee's discretion, and thus as a matter of law could not be reversed by the Court or a jury. Second, Cloutier's fiduciary duty claims are redundant of his benefits claims in which he challenges the Committee's interpretation of the Plan. Accordingly, those claims also fail to state a claim for which relief could be granted. Third, Cloutier's allegation that the Defendants violated the notice provisions of 29 U.S.C. §1021 is badly misplaced, as his July 24, 2001 request was insufficient as a matter of law to trigger the requirements of the statute.

In support of this Motion, Defendants refer to and incorporate herein the Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint or, in the Alternative, for Judgment on the Pleadings, and the Answer, that are filed herewith.

**Request for Oral Argument**

Pursuant to Local Rule 12(b), an oral argument is hereby requested on this dispositive motion. Defendants believe that oral argument is desirable in order to address any questions raised by the Court and in order to further set forth the reasons why Plaintiff's Complaint fails to state a claim upon which relief can be granted. Defendants estimate that thirty minutes will be necessary for all parties to be heard.

Respectfully submitted,

PAUL V. CURCIO (#1965)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Telephone: (401) 274-7200
Fax: (401) 751-0604/351-4607

Kenneth W. Salinger
Sean M. Becker
PALMER & DODGE LLP
111 Huntington Avenue at Prudential Center
Boston, MA 02199-7613
Telephone: (617) 239-0100
Fax: (617) 239-0817

Dated: June 17, 2005

## CERTIFICATION

I hereby certify that a true and accurate copy of the within was mailed via regular mail to the following attorneys of record: Mark B. Morse, Esq., 420 Angell Street, Providence, RI 02906, on this 17 day of June, 2005.

**ORAL ARGUMENT REQUESTED**

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RAYMOND CLOUTIER,<br><br>Plaintiff,<br><br>v.<br><br>WESTERN UNION EMPLOYEE BENEFIT FUND COMMITTEE, and WESTERN UNION FINANCIAL SERVICES, INC., PENSION PLAN,<br><br>Defendant. | Civil Action No. 05-182T |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS**

Paul V. Curcio (#1965)
ADLER POLLOCK & SHEEHAN P.C.
2300 Bank Boston Plaza
Providence, RI 02903-2443
Tel.: (401) 274-7200
Fax: (401) 351-4607

Kenneth W. Salinger (*pro hac vice*; Mass. BBO #556967)
Sean M. Becker (*pro hac vice*; Mass. BBO #641763)
PALMER & DODGE LLP
111 Huntington Avenue at Prudential Center
Boston, MA 02199-7613
617-239-0100

June 17, 2005

# TABLE OF CONTENTS

Page

Introduction and Summary of Argument ....... 1

Legal Standard – Relevance of Documents Integral to the Complaint ....... 3

Summary of Factual Allegations ....... 4

1. After 11 ½ Years of Leave, Cloutier Requests a Recall to his Former Position but Fails to Provide Documentation that he is Qualified to Return to Work ....... 4

2. Cloutier Asserted that He Remained an "Active Employee" and Was Therefore Entitled to a "Class 80" Pension ....... 5

3. Western Union and the Committee Initially Concluded that Cloutier's Service Time Did Not Accrue During the Entirety of His Workers' Compensation Leave and that He Therefore Did Not Qualify for a "Class 80" Pension ....... 6

4. After Cloutier Presented New Evidence, the Committee Granted His Appeal and Awarded Him a Class 80 Pension as of October 17, 2003 ....... 7

5. The Committee Has Full Discretion to Construe the Terms of the Plan ....... 8

6. The Plan Expressly Provides that Pension Benefits Are Not Payable Until "the [T]ermination of [E]mployment," and Cloutier Repeatedly Emphasized after July 24, 2001 that His Employment Had Not Been Terminated ....... 8

Argument ....... 9

I. THE BENEFITS CLAIMS ADVANCED IN COUNTS I AND IV MUST BE DISMISSED BECAUSE THE COMMITTEE HAD FULL DISCRETION TO INTERPRET THE PENSION PLAN, AND CLOUTIER'S ALLEGATIONS DEMONSTRATE THAT THE COMMITTEE'S INTERPRETATION WAS NOT ARBITRARY OR CAPRICIOUS ....... 9

Page

II. COUNTS II AND III FAIL TO STATE ACTIONABLE CLAIMS, AS THEY ARE RECAST VERSIONS OF CLOUTIER'S INADEQUATE BENEFITS CLAIMS ....................13

A. Counts II and III Must Be Dismissed against the Plan, as Claims for Breach of Fiduciary Duty May Not Be Brought against the Plan Itself ....................13

B. Cloutier May Not Assert Duplicative Claims for Loss of Benefits in the Guise of Fiduciary Duty Claims. ....................14

III. COUNT V FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ....................17

A. Count V Must Be Dismissed against the Plan, as Claims for a Violation of 29 U.S.C. §1021 May Be Brought Only against the Committee ....................17

B. Cloutier's Claim Does Not Come Within the Ambit of 29 U.S.C. § 1021 ....................17

Conclusion ....................19

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

RAYMOND CLOUTIER,

Plaintiff,

v.

WESTERN UNION EMPLOYEE BENEFIT FUND COMMITTEE, and WESTERN UNION FINANCIAL SERVICES, INC., PENSION PLAN,

Defendant.

Civil Action No. 05-182T

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS**

**Introduction and Summary of Argument**

The claims advanced by Plaintiff Raymond Cloutier ("Cloutier") must be dismissed in their entirety because Cloutier has failed to state a claim upon which relief may be granted. Defendant Western Union Employee Benefit Fund Committee (the "Committee") awarded Cloutier certain pension benefits as of October 17, 2003. Cloutier claims that he should have been awarded those benefits as of July 24, 2001. However, Cloutier has alleged no facts that would allow him to prove, as he must, that the Committee's benefits decision was "arbitrary and capricious." To the contrary, the challenged decision was supported by the plain language of the Western Union Financial Services, Inc. Pension Plan (the "Plan") as well as by Cloutier's own, repeated admissions that prior to October 2003 he remained an employee (which necessarily means he was not eligible for retirement benefits before that time). Accordingly, the entire



165464.5

premise of Cloutier's Complaint cannot be sustained and it is ripe for dismissal under Fed. R. Civ. P. 12(b)(6) or 12(c).

The Complaint alleges that the Committee and the Plan (collectively, the "Defendants") violated "the terms of the Plan" and violated the fiduciary duty and notice provisions of the Employee Retirement and Income Security Act ("ERISA"), which are codified at 29 U.S.C. §§ 1021 and 1109. Specifically, Cloutier claims that the Defendants violated ERISA when they exercised their discretion to interpret the Plan and concluded that: (i) by the Plan's terms, Cloutier's entitlement to pension benefits could only begin upon the "termination" of his employment; and (ii) that, therefore, his pension benefits could not be retroactively granted for a period in which Cloutier repeatedly emphasized that his employment had not been terminated. Complaint ¶¶ 8-22. The Complaint also alleges that Defendants failed to satisfy their ERISA obligation to provide Cloutier with a summary of his pension benefits that had accrued under the Plan by inadequately responding to a July 24, 2001 letter in which Cloutier asserted an entitlement "for recall to his former position" after an absence occasioned by a 1990 work-related injury. Complaint ¶¶ 6, 24-26.

The Complaint fails to state a viable claim. First, the interpretation of the Plan now challenged by Cloutier in Counts I and IV of the Complaint was entirely within the Committee's discretion, and thus as a matter of law could not be reversed by the Court or a jury. Second, the fiduciary duty claims advanced in Counts II and III are redundant of the benefits claims advanced in Counts I and IV. Accordingly, those claims also fail to state a claim for which relief could be granted. Third, the Complaint's allegation in Count V that the Defendants violated the notice provisions of 29 U.S.C. §1021 is badly misplaced, as Cloutier's July 24, 2001 request was insufficient as a matter of law to trigger the requirements of that statute.

**Legal Standard – Relevance of Documents Integral to the Complaint**

Under Rule 12(b)(6), the Court must review the legal sufficiency of the factual allegations in the Complaint, which are assumed to be true for the purpose of this motion. In so doing, the Court "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment." *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.,* 228 F.3d 24, 32 (1st Cir. 2000); *accord Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 879 n.3 (1st Cir. 1991).

"When the factual allegations of a complaint revolve around a document whose authenticity is unchallenged, that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Young v. Lepone*, 305 F.3d 1, 11 (1st Cir. 2002) (internal quotation and citation omitted); *accord Fudge v. Penthouse Int'l, Ltd.,* 840 F.2d 1012, 1015 (1st Cir. 1988) ("when plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading," quoting C. Wright & A. Miller, *Federal Practice and Procedure* § 1327 at 489 (1969)). Thus, this motion is properly based on facts established by documents referred to in the Complaint, or other documents that are "central to plaintiffs' claim" and "the authenticity of which [is] not disputed by the parties." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33-34 (1st Cir. 2001); *accord Watterson v. Page,* 987 F.2d 1, 3-4 (1st Cir. 1993) (in ruling on motion to dismiss, court may consider "documents the authenticity of which are not disputed by the parties").[1]

---

[1] Should the Court decide to rule on this motion pursuant to Fed. R. Civ. P. 12(c) instead of Fed R. Civ. P. 12(b)(6), the same standards will apply. "The standard applicable to a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is similar to the standard governing motions to dismiss pursuant to Fed. R. Civ. P.

However, conclusory allegations in the Complaint that are unsupported by any specific factual allegations may not be considered. *E.g., Barrington Cove, Ltd. Partnership v. Rhode Island Hous. and Mortgage Fin. Corp.*, 246 F.3d 1, 4-5 (1st Cir. 2001); *Serpa Corp. v. McWane, Inc.*, 199 F.3d 6, 9 (1st Cir. 1999). A plaintiff must "allege a factual predicate concrete enough to support his conclusory statement" in order to survive a motion to dismiss. *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 240 (1st Cir. 2004).

**Summary of Factual Allegations**

**1. After 11 ½ years of Leave, Cloutier Requests a Recall to His Former Position but Fails to Provide Documentation that he Is Qualified to Return to Work.**

Cloutier began working for Western Union Financial Services, Inc. ("Western Union") in 1964. (Complaint ¶ 5). In January 1990, he was injured in a work-related accident and, as a result, became eligible for workers' compensation benefits. (Id. ¶ 6). Over eleven years later, Cloutier – in his capacity as President of Local 1377 of the Communications Workers of America AFL-CIO – wrote to Western Union and, referring to himself in the third person, asserted that:

> He is no longer on Workers' Compensation and the Company did not contact him as to his status. He is entitled by [union] contract for recall to his former position, Technical Representative, without any discrimination. If Mr. Cloutier did not get injured on his job, he would have received a force reduction furlough by contract. The Company has in the past returned employees on a limited work basis. Even though there are not jobs in this area, Mr. Cloutier should be recalled and given a force reduction furlough and be entitled to all benefits of the Union contract. The Company is in violation of Articles 23, 24 and others of the Contract and the American Disabilities Act. Your response to this matter is appreciated!

---

12(b)(6)," and "[t]he only distinction is that, in the case of a Rule 12(c) motion, the question, generally, is not whether the plaintiff might be able to prove additional facts sufficient to support its claim; but, rather, whether it is clear from the facts alleged that the plaintiff cannot prevail." *Rivera v. Rhode Island*, 312 F. Supp. 2d 175, 177 (D. R.I. 2004) (citing *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988)).

(Answer at Exhibit 3, July 24, 2001 letter from Cloutier to M. Andersen, Western Union Vice President of Labor Relations, referenced to at ¶¶ 8 & 24 of Complaint.)

In response, Western Union requested evidence that Cloutier was physically qualified to return to work, and therefore eligible for recall. (Answer at Exhibit 4, July 11, 2002 letter from Reichert to Cloutier; Id. at Exhibit 5, September 6, 2002 letter from Reichert to Cloutier.) Eventually, Cloutier provided Western Union with a "medical status report," although the documents that he provided did not indicate that he was qualified to return to work. (Answer at Exhibits 6 and 7; Nov. 11, 2002 letter from Cloutier to Western Union and Nov. 22, 2002 letter from Reichert to Cloutier.)

**2. Cloutier Asserted that He Remained an "Active Employee" and Was Therefore Entitled to a "Class 80" Pension.**

Certain Plan participants are eligible for "Class 80" pensions when their combined age and years of employment with Western Union equal 80 years. As Section Three of the Plan provides:

> A Participant shall be granted a pension if upon termination of employment he meets the following terms and conditions:
>
> (b) Class 80. Unreduced Early Retirement Pension – Any Negotiable Participant having a Term of Employment of 20 years or more, who has not attained age 55 and whose combined years of age and years in his Term of Employment . . . total 80 or more, the pension to be payable immediately upon termination of employment.

(Answer at Exhibit 1, § 3.01(b); Complaint at ¶¶ 7-11 (referencing Plan and Class 80 benefits)).

On April 24, 2003, Cloutier wrote to Western Union and asserted that even though he had been away from work since 1990, his employment had never been terminated and, as a result, he was eligible for a "Class 80" Pension under the Plan. (Answer at Exhibit 8, April 24, 2003 letter from Cloutier to Reichert; Complaint at ¶¶ 8 & 24, (citing July 24, 2001 correspondence that is referenced in April 24, 2003 letter)).

In his April 24, 2003 letter, Cloutier also characterized his July 24, 2001 correspondence to Western Union's Vice President of Labor Relations as a "grievance," and a "request for [his] proper benefits" under the Class 80 provision. (Answer at Exhibit 8). Western Union treated Cloutier's April 24, 2003 correspondence as a claim of eligibility for a Class 80 pension and investigated the viability of that claim. (Answer at Exhibit 10, July 8, 2003 letter from Western Union to Cloutier).

**3. Western Union and the Committee Initially Concluded that Cloutier's Service Time Did Not Accrue During the Entirety of His Workers' Compensation Leave and that He Therefore Did Not Qualify for a "Class 80" Pension.**

Western Union determined that Cloutier had accrued 76 "years" for Class 80 calculation purposes, and thus fell short of the 80 "years" necessary to be eligible for the Class 80 benefit. (Answer at Exhibit 10; Complaint at ¶10 (referencing subsequent decision that endorsed Western Union's conclusion)). In reaching this determination, Western Union reasoned that: (1) Cloutier was 50 years old at the time of the January 24, 1990 injury that resulted in his absence; and (2) his term of employment should be defined as 26 total years, which was one year more than the actual service time that he had accrued prior to his injury-related absence. In making this latter calculation, Western Union relied upon Section 2.03 of the Plan, which states:

> Leaves of absence granted in conformity with the rules of the Company, absences from service caused by disability for which no disability benefits are paid and temporary lay-offs on account of reduction in force shall not constitute a Break in Service, **but only the first 12 months of any such period shall be included in a Participant's Term of Employment**.

(Answer at Exhibit 1, emphasis added). Adding Cloutier's 50 years of age at the time of his injury and his 26 years of service, the company determined that Cloutier had not met the cumulative 80 years of age and service necessary to qualify for a Class 80 pension. (Answer at Exhibit 10.) Nonetheless, it informed him that he was entitled to a deferred vested pension and,

if he wanted to dispute the company's decision, he was free to appeal directly to the Committee. (Id.).

By letter dated July 22, 2003, Cloutier petitioned the Committee and argued that because he never received a notice of termination after being injured in 1990, he remained "an active employee" and his service time should thus continue to accrue for purposes of calculating his Class 80 pension eligibility. (Answer at Exhibit 11, Cloutier July 22, 2003 letter to Committee; Complaint at ¶10 (referencing appeal)).

However, the Committee affirmed Western Union's decision. In doing so, it also relied upon Section 2.03 of the Plan and determined that because "only the first 12 months of any [leave of absence] period shall be included in a Participant's Term of Employment," Cloutier had not realized the requisite years of combined age and service to qualify for the Class 80 pension. (Answer at Exhibit 12).

**4. After Cloutier Presented New Evidence, the Committee Granted His Appeal and Awarded Him a Class 80 Pension as of October 17, 2003.**

Cloutier petitioned the Committee to consider his case yet again. (Answer at Exhibits 12-14). This time, he did not dispute whether his service time should have accrued during the period of his leave. Instead, he emphasized that, for Class 80 calculation purposes, his age should have continued to accumulate beyond the 12-month period that first followed his absence from service. In support of this theory, Cloutier provided the Committee with copies of an appeal from 1992 in which an employee was granted a pension because, "[w]hile on Workers Compensation disability, he still accumulated his age" for pension calculation purposes. (Answer at Exhibit 13; Complaint at ¶ 10 (citing Cloutier's appeal of the Committee's decision)).

The Committee met on October 16, 2003 and, persuaded by the additional information, determined that Cloutier was entitled to a Class 80 Pension. It thus concluded that Cloutier's

date of termination for Plan purposes would be the next day, October 17, 2003, and that he would be entitled to a Class 80 Pension as of then. (Answer at Exhibit 14; Complaint at ¶ 11 (citing Committee's November 4, 2003 final decision)).

**5. The Committee Has Full Discretion to Construe the Terms of the Plan.**

Pursuant to the Plan, the Committee has "responsibility for all phases of the administration of the Plan. . . . " (Answer at Exhibit 1, p. 61). The Plan provides that, in carrying out that administrative duty:

> [t]he Committee shall have discretionary authority to interpret the Plan (including but not limited to determination of the right and amount of any benefit payable under the Plan and the date on which any individual ceases to be a Participant).

(Id.).[2]

The Plan specifies that the Court must defer to any reasonable construction of the Plan:

> "The determination of the Committee as to the interpretation of the Plan or any disputed question arising in the administration of the Plan shall be conclusive and final for all parties to the extent permitted by law."

(Id. at pp. 61-62).

**6. The Plan Expressly Provides that Pension Benefits Are Not Payable Until "the [T]ermination of [E]mployment," and Cloutier Repeatedly Emphasized after July 24, 2001 that His Employment Had Not Been Terminated.**

In its November 4, 2003 decision, the Committee awarded Cloutier his Class 80 pension, but declined his request that it be paid retroactively to July 24, 2001. The Committee reasoned that the plain language of the Plan provided that a Class 80 Pension commences, at the earliest, "as soon as administratively possible following the termination of employment," and that Cloutier repeatedly represented that his employment had not terminated prior to October 16,

---

[2] *See also* Answer at Exhibit 2, pp. 18-19 & 24 (Summary Plan Description ("SPD"), referencing discretionary authority granted to Committee). The language of the SPD may properly be considered as part of this motion, as "[t]he SPD is a plan document." *Sidou v. Unumprovident Corp.*, 245 F. Supp. 2d 207, 218 (D. Me. 2003) (citing *Terry*, 145 F.3d at 41).

2003. (Answer at Exhibit 14 (Nov. 4, 2003 Committee letter to Cloutier), p. 2; Exhibit 1 (Plan) at pp. 14-15; Complaint at ¶ 11 (referencing Nov. 4, 2003 decision)).

That specific decision now forms the basis of Cloutier's Complaint, as he alleges that the Plan and the Committee improperly denied him benefits and breached fiduciary duties by determining that his Class 80 Pension would begin on October 17, 2003 instead of on July 24, 2001, when Cloutier requested a recall to his former position. (Complaint at ¶¶ 8, 13, 16, 19, 22). On multiple occasions after July 24, 2001, Cloutier provided written correspondence to Western Union or the Committee in which he insisted that his employment had not been terminated. (Answer at Exhibits 6, 8 & 11).

## Argument

### I. THE BENEFITS CLAIMS ADVANCED IN COUNTS I AND IV MUST BE DISMISSED BECAUSE THE COMMITTEE HAD FULL DISCRETION TO INTERPRET THE PENSION PLAN, AND CLOUTIER'S ALLEGATIONS DEMONSTRATE THAT THE COMMITTEE'S INTERPRETATION WAS NOT ARBITRARY OR CAPRICIOUS.

Counts I and IV of the Complaint assert almost identical claims alleging that Defendants' failure "to include the Plan 80 retirement benefits retroactive to July 24, 2001" violated the terms of the Plan and amounted to an abuse of the Committee's discretion. Although these Counts fail to cite the statutory provision under which they are brought, they can only be construed as a claim for benefits under ERISA § 502(a)(1)(B), which is codified at 29 U.S.C. § 1132(a)(1)(B). As a matter of law, each Count fails to satisfy the requirements necessary to state an ERISA benefits claim.

Counts I and IV ask the Court to substitute its judgment for that of the Committee and revisit the question of whether Cloutier should have been eligible for a Class 80 pension as of October 17, 2003 or July 24, 2001. But the Committee's decision is entitled to deference and did

not come close to violating the "arbitrary and capricious" standard that is necessary to state a claim under Section 502(a)(1)(B).

When a "benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," a decision not to award benefits may be reversed only if it is "arbitrary and capricious." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 114-115 (1989); *Liston v. UNUM Corp. Officer Severance Plan*, 330 F.3d 19, 21, 22 (1st Cir. 2003). The discretionary authority granted to the Committee to interpret the Pension Plan could not be more explicit. (Answer at Exhibit 1, p. 61). Accordingly, this Court must defer to the Committee's interpretation of the Plan, and may not disturb the Committee's interpretation so long as it is reasonable. *Terry v. Bayer*, 145 F.3d 28, 40 (1st Cir. 1998). "It is . . . the hallmark of such review that a court is not to substitute its judgment for that of the [Committee]." *Id* (internal quotation omitted).

In applying this standard under ERISA, the Court must determine whether the Committee's "eligibility determination was unreasonable in light of the information available to it." *Pari-Fasano v. ITT Hartford Life & Accident Ins. Co.*, 230 F.3d 415, 419 (1st Cir. 2000). Thus, the relevant factual record "consists of that evidence that was before the administrator when he made the decision being reviewed." *Cook v. Liberty Life Assurance Co.*, 320 F.3d 11, 19 (1st Cir. 2003).

Since no additional evidence may be considered in deciding whether the Committee made a reasonable interpretation of the Pension Plan, and the relevant facts are set forth in Cloutier's Complaint and the documents referred to therein, the Court may and indeed should

resolve the matter on a motion to dismiss.[3] *See, e.g., Morgan v. SKF USA, Inc.*, 385 F.3d 989 (6th Cir. 2004) (affirming Rule 12(b)(6) dismissal of benefits claim under ERISA § 502(a)(1) on ground that plan administrator's interpretation was reasonable); *Hickman v. Tosco Corp.*, 840 F.2d 564, 566-567 (8th Cir. 1988) (same); *Wininger v. Wilcox Fuel, Inc.*, 2004 WL 97626, *3-4 (D. Conn. 2004) (granting motion to dismiss ERISA claim on ground that denial of benefits was within the discretion given to the plan administrators under the terms of the plan).

"The arbitrary and capricious standard is the least demanding form of judicial review and requires only that determinations be rational in light of the plan's provision, as well as, reasonable with no abuse of discretion. In other words, when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." *Coleman v. Metropolitan Life Ins. Co.*, 919 F. Supp. 573 , 581 (D. R.I. 1996) (internal quotations and citations omitted).

There is no doubt that the interpretation of the Plan that Cloutier now challenges is "reasonable." Cloutier himself asserted after July 24, 2001 that he had not retired, and that even though he was "absent on account of an on the job accident . . . [his employment was] not terminated." Answer at Exhibit 11. Indeed, in Cloutier's July 22, 2003, appeal to the Committee, he made the following representations:

- "[F]rom the time I was injured on the job as of 1/24/90 [until July 22, 2003], I never received notice of termination .... All [Company Reports] list me as an active employee." (Id. at p. 1).
- "There isn't anything in [Cloutier's Union] contract or [the] Plan ...that states

[3] Cloutier alleges that the Committee's "refusal to include the Plan 80 benefits retroactive to July 24, 2001 is arbitrary and capricious and an abuse of its discretion." Complaint, ¶22. However, conclusory allegations of this sort are insufficient to make out a claim. *E.g., Barrington Cove.*, 246 F.3d at 4-5. This is especially true where, as here, a plaintiff's conclusory allegations are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely. 5A Wright &. Miller, *Federal Practice and Procedure* § 1363, at 464-65 (1990).

I am terminated after accepting a settlement in connection with my Worker's Compensation case. In fact, the language appears to indicate that my employment status has not been terminated." (Id.).

- "You haven't shown any proof that I was terminated from the Company, if anything, with correspondence about my Pension from Human Resources and the Companys' [sic] own Status Reports and no notice of termination indicates that I am still in their employment to this day." (Id.).

The plain language of the Plan is explicit that pensions only become effective "upon termination of employment." (Answer at Exhibit 1, p. 15). The Committee's conclusion that it should accept Cloutier's consistent, post-2001 argument that he had not been terminated, and that a Class 80 pension therefore should not commence until after the "termination of employment," was reasonable.

Given the facts in the administrative record considered by the Committee, and set forth in the Complaint, Cloutier cannot prove that the Committee acted arbitrarily in concluding that his pension benefits should commence as of October 17, 2003. In this case, the Committee's judgment easily satisfies any possible test of reasonableness. *See Massey v. Stanley-Bostitch, Inc.*, 255 F. Supp. 2d 7, 11-12 (D.R.I. 2003) (granting summary judgment against Section 502(a)(1)(B) claim when defendants' determination of "credited service" under retirement plan, although shorter than what plaintiff advocated, was not arbitrary and capricious); *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 458-459 (6th Cir. 2003) (denying claim when benefits committee could offer a "reasoned explanation" for its determination that plaintiff had not satisfied "qualifying termination," provision of severance plan, even though plaintiff alleged that his employment was constructively terminated); *Whitehead v. Oklahoma Gas & Elec. Co.*, 187 F.3d 1184, 1190 (10th Cir. 1999) (denying claim when decision not to bridge pension benefits for employee's initial years of employment prior to his departure and subsequent rehiring by employer was reasonable interpretation of plan documents).

In light of the deference that must be accorded to the Committee's decision, and in light of Cloutier's own assertions that it was reasonable to conclude that Cloutier's employment had not terminated on July 24, 2001, Cloutier cannot sustain his ERISA benefits claims. The determination that the beginning date for Cloutier's pension benefits was October 17, 2003 instead of July 24, 2001 was thus far from "arbitrary and capricious" and, accordingly, Counts I and IV must be dismissed.

## II. COUNTS II AND III FAIL TO STATE ACTIONABLE CLAIMS, AS THEY ARE RECAST VERSIONS OF CLOUTIER'S INADEQUATE BENEFITS CLAIMS

### A. Counts II and III Must Be Dismissed against the Plan, as Claims for Breach of Fiduciary Duty May Not Be Brought against the Plan Itself.

Counts II and III allege violations of 29 U.S.C. § 1109, which applies to "[a]ny person who is a fiduciary with respect to a plan," and creates an obligation to "make good *to such plan* any losses to the plan resulting from each such breach." 29 U.S.C. § 1109(a) (emphasis added). As the plain language of the statute provides, this fiduciary duty provision of ERISA does not give rise to a cause of action against a plan itself. Accordingly, Counts II and III must be dismissed to the extent that they were brought against the Plan. *Reich v. Rowe*, 20 F.3d 25 (1st Cir. 1994) (ERISA does not provide claim for relief to sue non-fiduciary in connection with breach of fiduciary duty); *Boucher v. Williams*, 13 F. Supp. 2d 84, 93 (D. Me. 1998) (benefit plan was not a "person" under 29 U.S.C. § 1109(a) and therefore not subject to claims of breach of fiduciary duty under the statute); *Brennan v. Consolidated Rail Corp. Matched Savings Plan*, 2000 WL 217664, *3 (E.D. Pa. 2000) (granting motion to dismiss fiduciary duty claim against benefits plan, as the "[p]lan is not a fiduciary, owes no fiduciary duties to a participant, and cannot be sued for a breach of fiduciary duty").

**B. Cloutier May Not Assert Duplicative Claims for Loss of Benefits in the Guise of Fiduciary Duty Claims.**

Counts II and III assert almost identical claims arising from the "refusal to include the Plan 80 benefits retroactive to July 24, 2001," which Cloutier alleges "is in violation of the obligations and responsibilities imposed on fiduciaries pursuant to 29 USC § 1109." (Complaint ¶¶ 15-20). Although cast as "fiduciary duty" claims, these Counts again pose the basic question of whether the Committee interpreted the Plan reasonably when it accepted Cloutier's repeated representations that his employment had not terminated after July 24, 2001 and it therefore concluded that his Class 80 benefits should therefore begin as of October 17, 2003 instead of July 24, 2001. Such duplicative claims cannot be sustained.

Only ERISA Section 502(a)(3) would afford Cloutier the opportunity for individual relief for a violation of 29 USC § 1109.[4] However, "a remedy is not available under [Section 502(a)(3)] where ERISA provides an adequate remedy elsewhere." *Davis v. Verizon New England*, 2004 WL 1529291 *7 (D. Me. 2004). By asserting a Section 502(a)(3) fiduciary duty claim in Counts II and III, Cloutier thus acknowledges the weaknesses of the Complaint's other counts. But even if the Court dismisses Counts I, IV and V – as it must – Counts II and III still fail to state actionable claims.

Like Counts I and IV, Counts II and III allege "loss of income and compensation" as the result of the Committee's misinterpretation of the Plan and seek "sums as to adequately compensate [Cloutier] for his losses." (Id. ¶¶ 14, 17, 20, 23). However, as a threshold matter,

---

[4] Although Section 502(a)(2) provides that a plan participant may sue for "appropriate relief" under 29 USC § 1109, a Section 502(a)(2) claim does not allow individuals to recover damages for themselves. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985). Cloutier's Complaint does not seek damages on behalf of the Plan, as it only alleges that Cloutier himself was denied benefits by virtue the Committee's interpretation of the Plan. *See Miller v. Nortel Networks Long Term Disability Plan*, 2005 WL 152127, *13 (D. N.H. Jan. 25, 2005) (fiduciary duty claim not brought on behalf of a plan cannot be sustained under Section 502(a)(2)).

Section 502(a)(3) authorizes only equitable relief. *Turner v. Fallon Community Health Plan, Inc.*, 127 F.3d 196, 197 (1st Cir. 1997). Thus, Counts II and III must be dismissed because they seek money damages – the same remedy sought through Counts I and IV. *See* Complaint ¶¶ 14, 17, 20 & 23; *see also Corsini v. United HealthCare Corp.*, 51 F. Supp. 2d 103, 106-107 (D. R.I. 1999) (granting motion to dismiss fiduciary duty claim that "defendants failed to administer the [p]lan according to its terms, thereby depriving the plaintiffs of benefits to which they were entitled" because Section 502(a)(1)(B) "specifically addresses and provides a panoply of remedies for a denial of benefits or a deprivation of rights under the terms of [a p]lan"); *Davis,* 2004 WL 1529291 at *7 (granting motion to dismiss fiduciary duty claim because "a remedy is not available under [Section 502(a)(3)] where ERISA provides an adequate remedy elsewhere"); *Kourinos v. Interstate Brands Corp.*, 324 F. Supp. 2d 105, 107 (D. Me. 2004) (dismissing claim for "equitable or declaratory relief" to the extent that it "alleges that [defendant] violated its fiduciary duty by wrongfully withholding benefits to which [plaintiff] was entitled"); *Miller*, 2005 WL 152127 at *13 ("because § 502(a)(1)(B) gives [plaintiff] the right to obtain benefits that were improperly withheld, he cannot also seek relief for the same injury under § 502(a)(3)").

Since a claim for denial of benefits must be brought under § 502(a)(1) as a matter of law, the same allegations cannot state an actionable claim under § 502(a)(3). *See Larocca v. Borden, Inc.*, 276 F.3d 22, 28 (1st Cir. 2002) ("federal courts have uniformly concluded that, if a plaintiff can pursue benefits under the plan pursuant to [§ 502(a)(1)(B)], there is an adequate remedy under the plan which bars a further remedy under [§ 502(a)(3)]"); *King v. UNUM Life Ins. Co. of America*, 221 F. Supp. 2d 1, 3-4 (D. Me. 2002) (granting 12(b)(6) motion and emphasizing that "[Section 502(a)(3)] does not act as an alternative theory upon which suits that are cognizable under [Section 502(a)(1)] may be brought").

Moreover, to the extent that Counts II or III seek any equitable relief through their plea for "such other relief as [the C]ourt deems appropriate," the relief that those Counts seek also is barred because it amounts to a declaration that Cloutier is entitled to benefits beginning as of July 24, 2001 instead of October 17, 2003, despite Cloutier's insistence that his employment was not terminated after July 24, 2001. By requesting such relief, Cloutier thus recasts his benefits claims and effectively uses Counts II and III as a means to ask the Court to ignore the deference that it must apply in dismissing Counts I and IV. *See* pages 9-12, above.

Although styled "fiduciary duty" claims, Count II and III are thus, at heart, the same denial-of-benefits claims asserted in Counts I and IV. But "if [Plaintiff] is not entitled to receive benefits under the plan [in the first place], he cannot base his breach of fiduciary duty claim on [a defendant's] refusal to pay him benefits." *Kourinos*, 324 F. Supp. 2d at 108 (granting motion to dismiss fiduciary duty claim and noting that "ERISA does not impose a fiduciary duty to pay benefits that are excluded under the plan") (citing *Turner*, 127 F.3d at 200). Further, the fact that Counts I and IV fail to state a claim upon which relief can be granted does not revive an otherwise futile Count II or Count III, as Section 502(a)(3) does not create an "alternative" means of recovery merely because a plaintiff's initially asserted means of recovery fails to state a viable claim. *See, e.g., Kourinos*, 324 F. Supp. 2d at 108; *Corsini*, 51 F. Supp. 2d at 106 (granting motion to dismiss fiduciary duty claims that "amount[ed] to nothing more than a relabeling of the [benefits] claim set forth in" another count); *Schmir v. Prudential Ins. Co. of America*, No. 03-187-GZS, 2003 WL 22466168, *4 (D. Me. 2003) (dismissing Section 502(a)(3) claim and noting that "[e]ven if [the plaintiff's Section 502(a)(1) claim] were to be dismissed in this case, [plaintiff] could not pursue his . . . claim under [Section 502(a)(3)]").

## III. COUNT V FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A. Count V Must Be Dismissed against the Plan, as Claims for a Violation of 29 U.S.C. §1021 May Be Brought Only against the Committee.

"Causes of action under [29 U.S.C. §] 1132(c) may be brought against designated plan administrators only, rather than the plan itself or the employer." *Dall v. Chinet Co.*, 33 F. Supp. 2d 26, 34 n.4 (D. Me. 1998) (citing *Thorpe v. Retirement Plan of Pillsbury Co.*, 80 F.3d 439, 444 (10th Cir. 1996)); *see also Klosterman v. Western Gen. Mgmt.*, 32 F.3d 1119, 1122 (7th Cir. 1994) (claim for relief for violations of ERISA's disclosure requirements is proper only against plan administrator). Accordingly, to the extent that Count V is brought against the Plan, it must be dismissed.

### B. Cloutier's Claim Does Not Come Within the Ambit of 29 U.S.C. § 1021.

29 U.S.C. § 1021 provides that "[t]he administrator of each employee plan shall cause to be furnished" to plan participants a summary plan description and particular financial statements regarding the Plan itself. *See* 29 U.S.C. §§ 1021(a)(2), 1024(b)(3) and 1025(c). Cloutier makes no claim that the defendants failed to satisfy any duty in this regard. Instead, the Complaint appears to assert that in response to Plaintiff's July 24, 2001 "request," defendants failed to provide the information required by 29 U.S.C. § 1025(a). That statute provides that:

> Each administrator of an employee pension plan shall furnish to any plan participant or beneficiary who so requests <u>in writing</u>, a statement indicating, on the basis of the latest available information –
>
> (1) the total benefits accrued, and
>
> (2) the nonforfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable.

29 U.S.C. § 1025(a) (emphasis added). Mr. Cloutier's July 24, 2001 request did not come close to triggering the Committee's obligations under this statute.

First, in order to trigger the Committee's obligations under 29 U.S.C. § 1021, a plan participant's request must be far more specific and entirely different in substance than the July 24, 2001 correspondence authored by Cloutier. Cloutier's letter asserted an entitlement to benefits under his union contract and made allegations of violations of that contract and the "American Disabilities Act." (Answer at Exhibit 3). It made absolutely no reference to the Plan and did not remotely resemble a request for the Plan's summary plan description or a summary of Cloutier's "total benefits accrued," or "nonforfeitable pension benefits if any, which ha[d] accrued, or the earliest date on which benefits [would] become nonforfeitable," as contemplated by the statute. 29 U.S.C. § 1021; 29 U.S.C. § 1025(a).

Because Cloutier's July 24, 2001 assertion bears no resemblance to the type of inquiry that could give rise to an actionable claim under 29 U.S.C. § 1021, Count V must be dismissed. *Pane v. RCA Corp.*, 868 F.2d 631, 638-639 (3rd Cir. 1989) (request for benefits was not a request for information within meaning of 29 U.S.C. §1132(c)); *Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618, 621-623 (7th Cir. 1987) (statutory penalty unavailable, as "courts that have considered whether a demand for benefits for payment constitutes a 'request' for information that would give rise to liability under § 1132(c) should the plan administrator fail to respond, have concluded that such a demand does not constitute a 'request for information' for purposes of § 1132(c)).

Further, 29 U.S.C. §1132(c) provides for the liability that Cloutier seeks to impose only if a ***Plan administrator*** fails to respond to a particular request in writing within 30 days:

> Any *administrator* . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested . . . within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day . . .

29 U.S.C. §1132(c) (emphasis added); *see also* Complaint at ¶¶ 25-26 (asserting that information requested was "of the type required to be furnished by the Administrator within thirty days" and seeking $100 fine for each day of alleged "noncompliance"). But Cloutier's request was not made to the Plan administrator, as statutorily required, but instead to his employer's Vice President of Labor Relations. (Answer at Exhibit 3; *see also* Complaint at ¶ 2 (deeming the Committee the administrator "at all times pertinent").

Under ERISA, "the term 'administrator' means – (i) the person specifically so designated by the terms of the instrument under which the plan is operated . . . ." 29 U.S.C. § 1002(16)(A)(i). That "person" is not the Western Union Vice President of Labor Relations to whom Cloutier sent his July 24, 2001 letter. For this reason as well, Count V fails to state a claim upon which relief can be granted.[5] *Jones v. UOP*, 16 F.3d 141, 144 (7th Cir. 1994) (where plan designates an administrator, document requests addressed to employer's legal department will not trigger civil penalties); *Seacoast Mental Health Ctr. v. Sheakley Pension Admin., Inc.*, 2001 WL 274816, *2-3 (D.N.H. Jan. 5, 2001) (denying claim when requests for information were made to entity that was not designated as Plan Administrator in summary plan description).

**Conclusion**

For the reasons stated above, Cloutier's claims should be dismissed with prejudice.

---

[5] Cloutier cannot salvage Count V by asserting that he made a verbal request to the Committee, or to any other entity that he deemed the Plan "administrator." The statute specifically requires that a request be made "in writing," and Courts enforce that requirement stringently. 29 U.S.C. § 1025(a); *Haberern v. Kaupp Vascular Surgeons Pension Plan*, 24 F.3d 1491, 1505 (3rd Cir. 1994), cert. denied, 115 S.Ct. 1099 (1995) (no statutory penalty could exist absent written request); *Tracey v. Heublein, Inc.*, 772 F. Supp. 726 (D. Conn. 1991) (same).

Respectfully submitted,

Paul V. Curcio (#1965)
ADLER POLLOCK & SHEEHAN P.C.
2300 Bank Boston Plaza
Providence, RI 02903-2443
Tel.: (401) 274-7200
Fax: (401) 351-4607

Kenneth W. Salinger
Sean M. Becker
PALMER & DODGE LLP
111 Huntington Avenue at Prudential Center
Boston, MA 02199-7613
Tel.: (617) 239-0100

June 17, 2005

**CERTIFICATION**

I hereby certify that a true and accurate copy of the within was mailed via regular mail/hand delivered to the following attorneys of record: Mark B. Morse, Esq., 420 Angell Street, Providence, RI 02906 on this 17th day of June, 2005.



165464.5